**MORROW NI LLP**
Xinlin Li Morrow (Cal. Bar No. 281707)
3333 Michelson Drive Suite 300
Irvine, CA 92612
Email: xinlin@moni.law
Phone: +1 (213) 282-8166

*Attorney for Petitioner*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN LAPAGLIA, an individual, <br><br> Petitioner, <br><br> vs. <br><br> VALVE CORPORATION, a corporation. <br><br> Respondent. | Case No. 3:25-cv-00833-RBM-DDL <br><br> Miscellaneous (Arbitration vacatur) <br><br> **FIRST AMENDED PETITION TO VACATE ARBITRATION AWARD AND TO REOPEN ARBITRATION FOR A REHEARING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

MOTION

John LaPaglia ("Mr. LaPaglia"), by and through his undersigned counsel, respectfully submits this <u>Amended</u> Petition to: (i) Vacate Arbitration Award and supporting Memorandum of Points and Authorities; (ii) direct the AAA to appoint a new arbitrator and administer a rehearing in the underlying arbitration; and (iii) compel the arbitration to be conducted individually and not in a consolidated fashion.

## I.     PRELIMINARY STATEMENT

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, Mr. LaPaglia seeks to vacate an arbitration award transmitted to his counsel on January 8, 2025, by an American Arbitration Association arbitrator, Michael Saydah ("Arbitrator Saydah"), in favor of Valve Corporation ("Valve"), the operator of the Steam Store ("Steam").

Arbitrator Saydah's award is subject to vacatur for three independent reasons: (1) Arbitrator Saydah consolidated Mr. LaPaglia's claims alongside 22 others' in violation of the parties arbitration agreement, which prohibited such consolidation without consent; (2) Arbitrator Saydah's refused to permit Mr. LaPaglia to submit an expert report proving Valve possesses a monopoly market share, core to Mr. LaPaglia's monopolization case (then ruled that Valve was not a monopoly based on Valve's one-sided submissions that Mr. LaPaglia, deprived of the best evidence of such market share, was unable to rebut); and (3) Arbitrator Saydah outsourced his adjudicative role to Artificial Intelligence ("AI"). In short, Arbitrator Saydah exceeded his authority under the parties' arbitration agreement and refused to hear evidence material and pertinent to Mr. LaPaglia's antitrust claims. Accordingly, as set forth in detail below, Arbitrator Saydah's award must be vacated pursuant to 9 U.S.C. §§ 10(a)(3), (a)(4).

## II.     JURISDICTION AND VENUE ARE PROPER IN THIS COURT

Mr. LaPaglia is a citizen of Connecticut. Valve Corporation's principal place of business and state of incorporation are both Washington. Mr. LaPaglia's consolidated arbitration took place in La Jolla, California, within this judicial district.

Diversity jurisdiction is based on diverse parties and an appropriate amount in controversy. Here, Valve concedes that the parties are diverse but argues that the amount in controversy does not

- 1 -
MOTION

meet the jurisdictional threshold because the award sought to be vacated is a zero dollar award. Dkt. 5-1 (Valve MTD), at 10-11.

"In *Theis Research, Inc. v. Brown & Bain,* the Ninth Circuit held that the measure of the amount of controversy in arbitration award cases is "the amount at stake in the underlying litigation, not the amount of the arbitration award." 400 F.3d 659, 662 (9th Cir.2005)" *Shannon Assocs. LLC v. MacKay*, No. C 09-4184 CW, 2009 WL 4756568, at *2 (N.D. Cal. Dec. 8, 2009). Following *Theis*, courts in this circuit look to the amount at stake in the underlying arbitration and "not the amount of the arbitration award" to determine the amount in controversy where the vacatur movant asks for the arbitration to be reopened. *Veronica McCluskey v. Airbnb, Inc.*, No. CV 19-9613 PA (PJWX), 2020 WL 2542616, at *3 (C.D. Cal. Jan. 7, 2020) (permitting amendment of FAA Petition to vacate to allege subject matter jurisdiction and sustaining amended petition).

The amount at stake "in the underlying litigation … includes … attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018). Here, Respondent would have been entitled to a mandatory attorney's fee award under the federal antitrust laws had he prevailed in the underlying arbitration. *See* 15 U.S.C. § 26 ("In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff."); *see also Costco Wholesale Corp. v. Hoen*, 538 F.3d 1128, 1136 (9th Cir. 2008) ("because fee shifting under § 26 is mandatory, equity cannot influence the determination of whether fees and costs should be awarded to substantially prevailing plaintiffs under that statute.").

Because Respondent seeks to vacate the award and has asked the arbitration be reopened for a rehearing, the amount at stake includes the attorney's fees that would be awarded if Respondent prevails in an arbitral re-hearing. Here, the underlying arbitration was heavily litigated for a year and half before reaching a merits hearing, which lasted two weeks. The attorney's fees at stake easily exceeds $75,000, the dispute meets the amount in controversy requirement.

### III.     FACTUAL AND PROCEDURAL BACKGROUND

Personal Computer ("PC") game sales generate tens of billions of dollars annually, the overwhelming majority of which—▮—flows through one company, Valve Corporation.

Valve's share of the PC game market is so great because Valve's online game store, Steam, dominates the distribution of PC games. Just like with music on iTunes, third-party PC game developers provide their games on Steam, and consumers purchase these games on Steam, with Steam functioning as a middleman. But unlike the market for music, with competitor platforms like Spotify, Steam is the only place most PC games can be purchased.

Mr. LaPaglia is a consumer of PC games and filed a claim demanding compensation for the higher prices he paid as a result of Valve's antitrust violations. He also filed a claim for breach of warranty stemming from a defective PC game he had purchased. This claim was unique to Mr. LaPaglia and not shared by the other claimants before Arbitrator Saydah.

The consolidated hearing before Arbitrator Saydah was held in-person in La Jolla, California in December 2024. Dkt. No. 1-2 (Exhibit 1). Without Mr. LaPaglia's consent, Arbitrator Saydah consolidated Mr. LaPaglia's claims with 22 other individuals who alleged antitrust and state law unfair competition claims against Valve. Mr. LaPaglia did not consent to this consolidation at the preliminary hearing.

The resulting consolidated hearing bore little resemblance to the individual, fair arbitration Mr. LaPaglia had contracted for. With so many consumer claims being consolidated, the vast majority of witnesses were consumers testifying as to their use of Steam. Only 3 of 18 witnesses addressed the antitrust claims—an expert for each side and one witness that Valve chose. Arbitrator Saydah refused to enforce any subpoenas issued for the appearance of Valve employees. During the arbitration, Mr. LaPaglia testified to and presented evidence supporting his claim that Valve sold him a defective PC game and refused to refund it. Valve also cross-examined Mr. LaPaglia on this claim. But Arbitrator Saydah did not address this claim at all in his decision.

Most troublingly, Arbitrator Saydah refused to let Mr. LaPaglia offer into evidence an expert report which established Valve's overwhelming ▮ market share. Dkt. No. 1-3 (Exhibit 2), 1700-05; Dkt. No. 1-4 (Exhibit 3), 1780-88. Arbitrator Saydah had originally ordered that the report be produced, Valve refused to produce it, but then Valve was forced to produce the report to Mr. LaPaglia's counsel in a *different* arbitration *during* the final merits hearing before Arbitrator Saydah. Yet despite previously ordering its production, and although the report was sitting on Mr.

- 3 -
PETITION

LaPaglia's counsel's computer in the arbitration, Arbitrator Saydah refused to let Mr. LaPaglia's counsel offer it into evidence. *Id.*

During breaks in the arbitration, Arbitrator Saydah told the parties he wanted to issue a decision quickly because he had a trip scheduled to the Galapagos islands. Dkt. No. 1-6 (Declaration of William Bucher). Arbitrator Saydah also revealed that he uses AI to write articles for him. *Id.* The hearing took place over 10 days, generating a 2,000-page transcribed record. *Id.* The final post-hearing brief was submitted on December 23, 2024, and the Award, at 29 pages long, was issued 15 days later (with Christmas and New Years in the middle) on January 7, 2025, when Arbitrator Saydah was scheduled to leave for the Galapagos. *Id.*

The award bore the hallmarks of AI drafting. For example, it mixes up simple fact, such as when it describes a children's game as one with "mature content like horror elements." When ChatGPT is asked whether the now-public portions of the award were written by a human or AI, ChatGPT concludes the opinion was mostly likely written by AI.[1] Dkt. No. 1-6 (Affidavit of David Jaffe).

## IV. LEGAL ARGUMENTS

### A. Arbitrator Saydah exceeded his power in consolidating Mr. LaPaglia's claims with 22 other individuals'

The agreement between Valve and Mr. LaPaglia prohibited consolidation of claims absent consent of all parties, yet Arbitrator Saydah consolidated the claims anyway. The Federal Arbitration Act (FAA) "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1988). Section 10(a)(4) of the FAA permits vacatur where an arbitrator "exceeded their powers." Arbitrators exceed their powers when they act outside the scope of the parties' contractual agreement. *Cristo v. Charles Schwab Corp.*, 2021 U.S. Dist. LEXIS 244294, *38, 2021 WL 6051825 (S.D. Cal. 2021). In consolidating Mr. LaPaglia's antitrust claims

---

[1] Because ChatGPT is not a secure, closed-loop platform, only a publicly available portion of the award was queried, rather than Mr. LaPaglia's entire award.

alongside 22 other individuals' claims and issuing one ruling that was to apply to all 23 claimants, Arbitrator Saydah exceeded his authority.

Arbitrators exceed their powers when they deny a party the "right to arbitration according to the terms for which it contracted." *W. Emplrs Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 261 (9th Cir. 1992) (finding an arbitrator exceeded their powers and ordering lower court to vacate arbitration award after moving party was "forced to arbitrate according to terms for which it did not bargain"). While courts do not make a habit of vacating arbitral awards solely for errors in contract interpretation, vacatur is required where the arbitrators' actions are not a plausible interpretation of the agreement. *Seaguard Elecs., LLC v. Audiovox Corp.*, 2023 U.S. Dist. LEXIS 137988 (C.D. Cal. 2023) (citing *Lagstein v. Certain Underwriters at Lloyd's*, 607 F.3d 634 (9th Cir. 2010)).

Section 11 of the Steam Subscriber Agreement (SSA) is clear: YOU AND VALVE AGREE TO RESOLVE ALL DISPUTES AND CLAIMS BETWEEN US IN **INDIVIDUAL** BINDING ARBITRATION." Dkt. No. 1-5 (Exhibit 4) (emphasis added). Clause 11.D of the SSA leaves no room for misinterpretation:

> YOU AND VALVE AGREE NOT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION, WHISTLE BLOWER ACTION, OR CLASS, COLLECTIVE, OR REPRESENTATIVE ARBITRATION, EVEN IF AAA's RULES WOULD OTHERWISE ALLOW ONE. THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT OF THAT PARTY'S INDIVIDUAL CLAIM. You and Valve also agree not to seek to combine any action or arbitration with any other action or arbitration without the consent of all parties to this Agreement and all other actions or arbitrations. This Agreement does not permit class, collective, or representative arbitration. A court has exclusive authority to rule on any assertion that it does.

Arbitrator Saydah exceeded his authority when he consolidated the disparate claimants before him. The contract left no room for Arbitrator Saydah to determine that the contract permits collective proceedings at all. To the contrary, the agreement is clear "a court has exclusive authority to rule on any assertion that it does." *Cf. United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("The arbitrator may not ignore the plain language of the contract."). Arbitrator Saydah did not err by misreading the contract. He lacked the authority to even attempt to determine whether the contract permitted nonconsensual consolidation before him; that power was reserved for a court.

Arbitrator Saydah acted outside the scope of his authority under the agreement, exceeding his powers per 9 U.S.C. § 10(a)(4). "[A]n arbitrator does not have authority to expand the action submitted to him into a class action in favor of all similarly situated employees. *Michelson's* suggests that arbitrators do not have power to add new parties to arbitration proceedings, at least not without the consent of all the parties. That proposition is consistent with the FAA's emphasis on the power of the courts to determine disputes over arbitrability and to compel arbitration." *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1026-1027 (9th Cir. 1991).[2]

### B. Arbitrator Saydah refused to hear pertinent and material evidence of Valve's overwhelming market share

The FAA permits vacatur "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). During the arbitration, Arbitrator Saydah refused to allow Mr. LaPaglia to present an expert report (the "Schwartz Report") that calculated Valve's market share at ▮.

The Schwartz Report (1) was pertinent and material to Mr. LaPaglia's antitrust and unfair competition claims, (2) directly contradicted Valve's expert report and testimony, (3) was written with more reliable information than even that Valve allowed its own expert to access, and (4) was the same report that convinced a federal judge to grant class certification to a group of game developers in a parallel antitrust case against Valve.

Courts vacate arbitral decisions for a refusal to hear evidence when the arbitrator's decision makes the hearing fundamentally unfair. *Moonshadow Mobile, Inc. v. Labels & Lists, Inc.*, 2024 U.S. Dist. LEXIS 205380, *20, n.3, 2024 WL 4709915 (D. Oregon 2024) (vacating award even though no ill-will or intentional conduct was attributable to the arbitrator). Vacatur is warranted where the arbitrator's evidentiary decisions are "substantially inadequate." *Lindsey v. Travelers Commer. Ins. Co.*, 636 F. Supp. 3d 1181, 1183-1184 (E.D. California 2022) (Granting vacatur

---

[2] One victim of this extra-contractual consolidation with other claimants was Mr. LaPaglia's unique, individual breach of warranty claim for his purchase of a defective game. In the final ruling in the consolidated proceeding, it was literally forgotten about.

where an arbitrator ruled employee in employment discrimination dispute failed "to show race was even a factor" in employer's pay decisions after refusing to compel production of documents showing a Black employee was paid much less than similarly qualified White coworkers), citing *Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 842 (9th Cir. 1987).

Mr. LaPaglia alleged Valve operates an illegal monopoly in violation of federal and state competition laws, including Section 2 of the Sherman Antitrust Act ("Sherman 2"). An essential factor in the resolution of Sherman 2 claims is the company's market share. *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022) ("In the context of a Section 2 claim . . . market share is perhaps the 'most important factor to consider' when determining whether a defendant has monopoly power. . . To meet the first element of a Section 2 claim, a plaintiff generally must . . . establish that the defendant possesses market share in that market sufficient to constitute monopoly power.").

Section 2 of the Sherman Act makes it unlawful to monopolize trade, violation of which can be proven with either direct or indirect evidence of monopoly power. 15 U.S.C. § 2; *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 484 (9th Cir. 2021). A market share of 50% or more establishes a prima facie inference of monopoly power in Section 2 contexts. *See* Merger Guidelines n. 30 (U.S. Department of Justice and the Federal Trade Commision 2023); *see also Pac. Steel Grp. v. Commercial Metals Co.*, 2021 U.S. Dist. LEXIS 97113, *16-17, 2021 WL 2037961 (N.D. Cal. 2021) ("Given that the complaint includes allegations of 50% market share and '[s]ubstantial barriers to entry . . . that make CMC's market power durable,' . . . the Court finds that PSG has plausibly alleged CMC's market power in the rebar manufacturing market").

Arbitrator Saydah prevented Mr. LaPaglia from presenting an expert report showing Valve possesses a ▮ market share, far above any judicial or agency-recognized threshold for presuming monopoly power.

The Award itself recognized that Valve's share of the PC game market was "a major dispute" in the case, with Valve's expert maintaining the company "has a 22% to 23% market share," below the threshold for the inference of monopoly power. Dkt. No. 1-2 (Exhibit 1), at 24. But Valve's expert's estimate was not based on Valve's internal market data like the Schwartz

1  Report was. Instead, Valve's expert only relied on publicly available guesstimates from Internet
2  websites. Relying on Valve's one-sided presentation, Arbitrator Saydah found Valve did not have
3  more than 50% of the market, meaning Mr. LaPaglia never benefited from a presumption that
4  Valve unlawfully possesses monopoly power, prejudicing Mr. LaPaglia with respect to the ultimate
5  outcome of the arbitration.

6  Where evidence that is excluded is "unquestionably relevant" to prove the moving party's
7  claims, the decision to exclude such evidence justifies vacatur. *Lindsey v. Travelers Commer. Ins.*
8  *Co.*, 636 F. Supp. 3d at 1185, *citing Hoteles Condado Beach, La Concha & Convention Center v.*
9  *Union de Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985).

10  Furthermore, Arbitrator Saydah's decision not to allow the presentation of the expert report
11  was itself inexplicable, further justifying vacatur. *Lindsey v. Travelers Commer. Ins. Co.*, 636 F.
12  Supp. 3d at 1185 ("This case is an example of a similarly inexplicable refusal to hear 'evidence
13  pertinent and material to the controversy'").

14  As part of the pre-trial information exchange process, Arbitrator Saydah ordered Valve to
15  produce the Schwartz Report calculated using Valve's own data. It was on the basis of that very
16  same expert report that Judge Jamal Whitehead certified a class of PC game developers who are
17  currently suing Valve for the same anticompetitive conduct alleged by Mr. LaPaglia. Order
18  Certifying Class, *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JNW (W.D.Wa 2024).

19  Valve refused to comply with Arbitrator Saydah's order to produce the report, but
20  Arbitrator Saydah did not take action to enforce his own production order. Mr. LaPaglia's counsel,
21  however, gained access to the report after it successfully compelled Valve to produce it in a
22  separate proceeding. Mr. LaPaglia's counsel asked Arbitrator Saydah for permission to present the
23  report, and Arbitrator Saydah denied the request. In explaining his denial, the arbitrator seemed
24  keenly aware of the vacatur risk he was creating. ████████████████████
25  ████████████████████████████████████████
26  ████████████████████████ Dkt. No. 1-4 (Exhibit 3), 1780-88.

27  **C.  Arbitrator Saydah exceeded his power in outsourcing his adjudicatory role to Artificial Intelligence**
28

- 8 -
PETITION

Section 10(a)(4) of the FAA permits vacatur where an arbitrator "exceeded their powers." This occurs when an arbitrator acts outside the scope of the parties' contractual agreement. *Cristo v. Charles Schwab Corp.*, 2021 U.S. Dist. LEXIS 244294, *38, 2021 WL 6051825.

Artificial intelligence was used to draft the award, supplanting Arbitrator Saydah's fact finding and adjudicative role with facts found by a machine. Arbitrator Saydah admitted to the parties that he uses ChatGPT to write articles. Specifically, during a break, Arbitrator Saydah told a story about how he had been assigned to write a short article on an aviation club he was part of, and that he had used ChatGPT to write it to save time. Dkt. No. 1-6 (Declaration of William Bucher). Arbitrator Saydah also noted for the parties that he was leaving for a trip to the Galapagos soon and wanted to get the case done before then. Dkt. No. 1-6 (Declaration of William Bucher).

Arbitrator Saydah's opinion for Mr. LaPaglia's case has telltale signs of AI generation. The facts section cites facts that are both untrue and not presented at trial or present in the record. For example, Arbitrator Saydah's decision states, without source attribution, that "Other platforms such as Roblox innovate in other ways with more mature content like horror elements paying off." Dkt. No. 1-2 (Exhibit 1), at 26. But Roblox is a *children's* game with no horror elements. No testimony or document in the record, or anything, suggested otherwise. This sort of hallucinating or mixing up of facts is frequent when using AI tools to write content. Arbitrator Saydah's seemingly random, uncited reference to Roblox's marketing strategy that is only tangentially related to the parties' dispute betrays the use of artificial intelligence to find "facts."

Similarly, the decision states that "Just last year Sony and Microsoft partnered together to explore cloud gaming and streaming solutions using Microsoft Cloud Azure" and that "There is also major competition from China with their own developers and platforms, and also competition from companies in the United States, in the race to capture the Chinese market for PC Games." *Id.* Neither of these statements were in the record or otherwise evidenced or even argued, and neither fact findings bear any citations, again demonstrating Arbitrator Saydah relied on generative AI to determine the facts of the case and make decisions on market power and competition for him.

Prompted by these observations, Mr. LaPaglia's counsel's law clerk asked ChatGPT whether it believed the Roblox paragraph was written by a human or AI.[3] ChatGPT stated that the paragraph's awkward phrasing, redundancy, incoherence, and overgeneralizations "suggest that the passage was generated by AI rather than written by a human." Dkt. No. 1-7 (Affidavit of David Jaffe).

The decision must be vacated because, by relying on AI to reach his ruling, Arbitrator Saydah exceeded his authority bound by the scope of the parties' arbitration agreement. The parties' arbitration agreement empowers "a neutral arbitrator" to resolve disputes between them. Dkt. No. 1-5 (Exhibit 4). The agreement also binds the arbitrator, who is responsible for supplying "a written decision" and a "statement of reasons" for their holding. *Id*. An arbitrator's reliance on generative AI to replace their own role, and the parties' submissions, in the litigation process betrays the parties' expectations of a well-reasoned decision rendered by a human arbitrator.

Just as courts have vacated awards when the decision-making is outsourced to a person other than the arbitrator appointed, so too must a court vacate when that decision making is outsourced to an AI. *See Move, Inc. v. Citigroup Global Mkts.*, 840 F.3d 1152, 1159 (9th Cir. 2016) (vacating where "there is simply no way to determine whether" an unqualified "imposter" on the arbitration panel "influenced other members of the panel or that the outcome of the arbitration was affected by his participation"), citing *Stivers v. Pierce*, 71 F.3d 732, 747 (9th Cir. 1995) ("Particularly on a small board, . . . it is difficult if not impossible to measure the impact that one member's views have on the process of collective deliberation. Each member contributes not only his vote but also his voice to the deliberative process."); *See also Bassett's Adm'r v. Cunningham's Adm'r*, 50 Va. 684, 692 (Va. 1853) ("The authority of an arbitrator cannot be delegated to an agent. . . In this case the arbitrators appointed other persons to examine the accounts and vouchers in the case, and adopted their conclusions without examining the vouchers themselves. This was held sufficient ground for setting aside the award.")

---

[3] While the decision is marked confidential and not publicly available, Valve made a redacted version of the identical opinion from another claimant before Arbitrator Saydah publicly available in a separate court proceeding. The decision contains the exact same paragraph, unredacted, word for word, that was used for the ChatGPT inquiry.

## V. CONCLUSION

Because Arbitrator Saydah's award was the product of an improperly consolidated hearing, a refusal to hear evidence, and AI, it is respectfully submitted that Mr. LaPaglia's Petition for Vacatur and Reopening should be granted, the award be set aside, and the rehearing be compelled to be conducted individually and not in a consolidated fashion.

Dated: May 19, 2025

Respectfully submitted,
Morrow Ni LLP

By: /s/ Xinlin Li Morrow
Xinlin Li Morrow
*Attorney for Plaintiff*