**MORROW NI LLP**
Xinlin Li Morrow (Cal. Bar No. 281707)
3333 Michelson Drive Suite 300
Irvine, CA 92612
Email: xinlin@moni.law
Phone: +1 (213) 282-8166

*Attorney for Petitioner*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LAPAGLIA, an individual,<br><br>Petitioner,<br><br>vs.<br><br>VALVE CORPORATION, a corporation.<br><br>Respondent. | Case No. 3:25-cv-00833-RBM-DDL<br><br>Miscellaneous (Arbitration vacatur)<br><br>**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS FIRST AMENDED PETITION TO VACATE ARBITRATION AWARD** |

Petitioner John LaPaglia ("Mr. LaPaglia" or "Petitioner") respectfully submits this Opposition to Respondent Valve Corporation's ("Valve" or "Respondent") Motion to Dismiss the First Amended Petition to Vacate Arbitration Award (the "Motion"). Dismissal is unwarranted because this Court has subject matter jurisdiction.

## I. PRELIMINARY STATEMENT

Valve's motion to dismiss for lack of subject matter jurisdiction is meritless and represents yet another instance in Valve's ongoing pattern of dilatory litigation tactics. The First Amended Petition (the "Petition") asks this Court to compel a new, fair arbitration on the ground that the arbitrator exceeded his authority and to vacate the improper award. Rather than respond to the merits of Mr. LaPaglia's claims, Valve attempts to manufacture a jurisdictional defect, and in doing so focuses on principles and case law that is unrelated to supplemental and diversity jurisdiction. Valve's reliance on such irrelevant principles and inapposite case law is a transparent attempt to distract from the settled legal standard governing diversity jurisdiction in actions to vacate arbitration awards.

Valve relies heavily on *Badgerow v. Walters*, 596 U.S. 1 (2022), a case addressing the limits of federal question jurisdiction under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 9 and 10. *Badgerow*'s holding, that vacatur actions under the FAA require an additional jurisdictional hook, does not divest this action of jurisdiction because the court has both diversity jurisdiction and supplemental jurisdiction over the claim. As explained below, *Badgerow* has no bearing on the analysis of supplemental jurisdiction, or the jurisdictional amount required under § 1332.

In the Ninth Circuit, the amount in controversy in FAA-related proceedings is measured by the financial stake of the party seeking relief, including any attorneys' fees recoverable under statute or contract. Respondent misconstrues this standard and relies on *Tesla Motors, Inc. v. Balan*, 134 F.4th 558 (9th Cir. 2025), where the petitioner did not seek and had no right to attorneys' fees; rather, the *Tesla* petitioner merely sought to confirm an arbitration award of zero dollars.

This Court has original jurisdiction over Mr. LaPaglia motion to compel arbitration and supplemental jurisdiction over Mr. LaPaglia's motion to vacate the improper arbitration award.

Further, Mr. LaPaglia satisfied the $75,000 jurisdictional threshold, and Valve has not shown otherwise. The Court should recognize Valve's Motion for what it is: precisely the kind of procedural gamesmanship that Congress sought to deter when it permitted antitrust plaintiffs to recover attorneys' fees in the first place. Accordingly, this Court has subject matter jurisdiction and should deny Valve's Motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Personal Computer ("PC") game sales generate tens of billions of dollars annually, the overwhelming majority of which flows through one company, Valve Corporation.

Valve's share of the PC game market is so great because Valve's online game store, Steam, dominates the distribution of PC games. Just like with music on iTunes, third-party PC game developers provide their games on Steam, and consumers purchase these games on Steam, with Steam functioning as a middleman. But unlike the market for music, with competitor platforms like Spotify, Steam is the only place most PC games can be purchased.

Mr. LaPaglia is a consumer of PC games and filed a claim demanding compensation for the higher prices he paid as a result of Valve's antitrust violations. He also filed a claim for breach of warranty stemming from a defective PC game he had purchased. This claim was unique to Mr. LaPaglia and not shared by the other claimants before Arbitrator Saydah. At the time he brought his dispute, he requested filing fees from Valve. Valve refused, noting that "Valve agrees to reimburse those when its subscribers 'seek $10,000 or less…'" but Mr. LaPaglia "seeks not only compensatory damages, but punitive damages, costs, attorneys' fees, and injunctive relief." Declaration of William Bucher ("Bucher Decl."), Exhibit 4.

The consolidated hearing before Arbitrator Saydah was held in-person in La Jolla, California in December 2024. Dkt. No. 1-2 (Exhibit 1). Without Mr. LaPaglia's consent, Arbitrator Saydah consolidated Mr. LaPaglia's claims with 22 other individuals who alleged antitrust and state law unfair competition claims against Valve. Mr. LaPaglia did not consent to this consolidation at the preliminary hearing.

The resulting consolidated hearing bore little resemblance to the individual, fair arbitration Mr. LaPaglia had contracted for. With so many consumer claims being consolidated, the vast

majority of witnesses were consumers testifying as to their use of Steam. Only 3 of 18 witnesses addressed the antitrust claims—an expert for each side and one witness that Valve chose. Arbitrator Saydah refused to enforce any subpoenas issued for the appearance of Valve employees. During the arbitration, Mr. LaPaglia testified to and presented evidence supporting his claim that Valve sold him a defective PC game and refused to refund it. Valve also cross-examined Mr. LaPaglia on this claim. But Arbitrator Saydah did not address this claim at all in his decision.

Most troublingly, Arbitrator Saydah refused to let Mr. LaPaglia offer into evidence an expert report which established Valve's overwhelming market share. Dkt. No. 1-3 (Exhibit 2). 1700-05; Dkt. No. 1-4 (Exhibit 3), 1780-88. Arbitrator Saydah had originally ordered that the report be produced, Valve refused to produce it, but then Valve was forced to produce the report to Mr. LaPaglia's counsel in a *different* arbitration *during* the final merits hearing before Arbitrator Saydah. Yet, despite previously ordering its production, and although the report was sitting on Mr. LaPaglia's counsel's computer in the arbitration, Arbitrator Saydah refused to let Mr. LaPaglia's counsel offer it into evidence. *Id.*

During breaks in the arbitration, Arbitrator Saydah told the parties he wanted to issue a decision quickly because he had a trip scheduled to the Galapagos islands. Dkt. No. 1-6 (Declaration of William Bucher). Arbitrator Saydah also revealed that he used AI to write articles for him. *Id.* The hearing took place over 10 days, generating a 2,000-page transcribed record. *Id.* The final post-hearing brief was submitted on December 23, 2024, and the Award, at 29 pages long, was issued 15 days later (with Christmas and New Years in the middle) on January 7, 2025, when Arbitrator Saydah was scheduled to leave for the Galapagos. *Id.*

The award bore the hallmarks of AI drafting. For example, it mixes up simple facts, such as when it describes a children's game as one with "mature content like horror elements." When ChatGPT is asked whether the now-public portions of the award were written by a human or AI, ChatGPT concludes the opinion was most likely written by AI.[1] Dkt. No.1-6 (Affidavit of David Jaffe).

---

[1] Because ChatGPT is not a secure, closed-loop platform, only a publicly available portion of the award was queried, rather than Mr. LaPaglia's entire award.

## III. LEGAL STANDARD

Under § 1367(a), federal courts may exercise jurisdiction over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367 "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).

Although § 1367(c) permits district courts to decline supplemental jurisdiction in certain circumstances—such as when state law claims predominate or when all federal claims are dismissed—the Ninth Circuit has emphasized that the exercise of supplemental jurisdiction is strongly encouraged when the federal and state claims are closely intertwined. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (noting that courts may decline supplemental jurisdiction only if one of the § 1367(c) factors is met).

In addition, under 28 U.S.C. § 1332, federal courts may exercise diversity jurisdiction over a dispute between citizens of different states with an amount in controversy that exceeds $75,000. To justify dismissal pursuant to Rule 12(b)(1), "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000) (internal quotations omitted). As the Ninth Circuit has repeatedly held, the "sum claimed by the plaintiff controls so long as the claim is made in good faith." *Id.*; *see also Farrell v. Verbero Sports, Inc.*, No. 21-CV-01610-GPC-MSB, 2022 WL 4092675, at *2 (S.D. Cal. Jan. 5, 2022). "To justify dismissal of a claim originally filed in federal court on the basis that the alleged amount in controversy is insufficient to confer jurisdiction, the Court applies the 'legal certainty' test, which requires that it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Hammett v. Sherman*, No. 19CV605-LL-AHG, 2022 WL 4793495, at *3 (S.D. Cal. Sept. 30, 2022) (internal citation omitted). In evaluating whether the amount in controversy requirement is met, "We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)

The "Ninth Circuit has recently reiterated that when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Bolger-Linna v. Am. Stock Transfer & Tr. Co., LLC*, No. 3:24-CV-00539-RBM-VET, 2024 WL 4713905, at *8 (S.D. Cal. Nov. 7, 2024) (internal quotations omitted).

## IV. THIS COURT HAS SUBJECT MATTER JURISDICTION TO COMPEL ARBITRATION PURSUANT TO FAA § 4 AND SUPPLEMENTAL JURISDICTION TO VACATE THE PRIOR AWARD PURSUANT TO FAA § 10.

A federal court has jurisdiction over a petition to compel arbitration under FAA § 4 if the court would have jurisdiction over the underlying dispute. *See Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009); *see also Badgerow v. Walters*, 596 U.S. 1, 5, 142 S. Ct. 1310, 1314, 212 L. Ed. 2d 355 (2022) (same). Thus, when an arbitration arises out of a dispute involving alleged violations of the Sherman Act, 15 U.S.C. § 2—a federal statute that provides original federal question jurisdiction under 28 U.S.C. § 1331—federal courts would have original jurisdiction over the motion to compel arbitration under § 4 of the FAA. *See, e.g.*, *United Food & Com. Workers Loc. Union Nos. 137, 324, 770, 899, 905, 1167, 1222, 1428, & 1442 v. Food Emps. Council, Inc.*, 827 F.2d 519, 523 n. 4 (9th Cir. 1987) (noting that "federal jurisdiction exists" when adjudicating disputes under the Sherman Act).

The motion to vacate the prior arbitration award, though brought under FAA § 10, falls within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). The motion to vacate is not a separate, freestanding action; it arises from the same underlying arbitration proceeding that Mr. LaPaglia now seeks to reopen through the motion to compel. Both motions—to vacate and to compel—are functionally intertwined and logically sequenced parts of the same dispute.

In *Badgerow v. Walters*, the Supreme Court clarified that federal jurisdiction over FAA § 9 and § 10 motions must be based on the application itself, not merely the underlying substantive dispute. 596 U.S. 1 (2022). But *Badgerow* did not involve a motion to compel arbitration under FAA § 4, and notably, the Court left untouched the "look-through" approach authorized for § 4 motions in *Vaden v. Discover Bank*, 556 U.S. 49 (2009). Because this Court has original jurisdiction over the § 4 motion under *Vaden*, it may exercise supplemental jurisdiction over the

related § 10 motion without contradicting the holding in *Badgerow*.

Moreover, declining to consider the § 10 motion while adjudicating the § 4 motion would undermine the goals of judicial economy and risk inconsistent results. The FAA is designed to offer an integrated, efficient framework for courts to supervise arbitration proceedings—not to splinter related motions across multiple forums or procedural tracks. Here, the motion to compel and the motion to vacate are not merely connected in time or subject matter; they are inextricably linked components of the same underlying dispute. Forcing the parties to litigate them separately would create unnecessary procedural fragmentation and could undermine coherent judicial oversight. Exercising supplemental jurisdiction over the § 10 motion ensures that the Court can resolve the parties' arbitration-related disputes in a unified, orderly manner, consistent with both the structure of the FAA and the principles underlying § 1367(a).

Accordingly, this Court has subject matter jurisdiction over the motion to compel arbitration under § 4 and should exercise supplemental jurisdiction over the motion to vacate under § 10.

## V. THE COURT HAS DIVERSITY JURISDICTION TO VACATE THE ARBITRATION AWARD AND COMPEL REHEARING

In addition to original and supplemental jurisdiction, this Court has subject matter jurisdiction to adjudicate the Petition under § 1332(a). The parties are citizens of different states, and the Petition expressly states that "the amount at stake includes the attorney's fees" and "easily exceeds $75,000." Dkt. 7 at 2. Valve does not dispute that diversity of citizenship is properly alleged. Dkt. 11-1 at 11. Instead, Valve argues only that the jurisdictional amount has not been met. *Id*. To support this argument, Valve misstates the law by contending that the attorneys' fees sought by Mr. LaPaglia should not be included in the Court's assessment of the amount in controversy. *Id*. Seemingly recognizing the weakness of this position, Valve further argues that the attorneys' fees sought are not reasonable simply because they exceed the underlying damages. As explained below, both arguments are without merit.

### A. The Amount in Controversy for Diversity Jurisdiction Purposes Includes Statutorily Mandated Attorneys' Fees.

As set forth above and in the Petition, the amount in controversy for diversity jurisdiction is the total amount sought by the petitioner. The Ninth Circuit consistently holds that when attorneys' fees are authorized by contract or statute, they are properly included in the calculation of the amount in controversy under 28 U.S.C. § 1332. *See, e.g.*, *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (the Ninth Circuit has "long held (and reiterated in *Chavez*) that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy.").

In seeking dismissal of the Petition, Valve contends that the amount in controversy is zero dollars—the amount of the arbitrator's award—and asserts that under *Badgerow v. Walters*, 596 U.S. 1 (2022) and *Tesla Motors, Inc. v. Balan*, 134 F.4th 558 (9th Cir. 2025), this Court may not "look through" the Petition to consider attorneys' fees. Dkt. 11-1 at 12 (internal quotations omitted). However, this argument contradicts Valve's position at the inception of this dispute and misstates both the legal standard and the holdings of the cited cases.

First, Valve initially denied Mr. LaPaglia's request for reimbursement of filing fees at the outset of this dispute, stating that "Valve agrees to reimburse those when its subscribers 'seek $10,000 or less…'" but Mr. LaPaglia "seeks not only compensatory damages, but punitive damages, costs, attorneys' fees, and injunctive relief. That plainly amounts to more than $10,000 per demand." Bucher Decl., Exhibit 4. By acknowledging that the amount in controversy includes attorneys' fees, Valve effectively conceded their inclusion in the valuation of the dispute. Now, however, Valve reverses its position, arguing that the amount Mr. LaPaglia seeks cannot include such fees.

Second, *Badgerow* clarified that Section 10 of the FAA does not, on its own, confer federal question jurisdiction, but federal courts may still adjudicate motions to vacate arbitration awards that have an independent jurisdictional basis. Importantly, this holding is limited to ***federal***

*question* jurisdiction under § 1331.  The Court reaffirmed that diversity jurisdiction remains a valid and independent basis for subject matter jurisdiction, and its decision does not, therefore, disturb the well-established principles governing *diversity* jurisdiction under § 1332.  *Id.* at 9 (noting that an "obvious place" to look for an "independent jurisdictional basis" would be in the petition and whether "it shows that the contending parties are citizens of different States (with over $75,000 in dispute)").

Thus, where, as here, the face of the Petition makes clear that the parties are "diverse" and the "attorney's fees at stake easily exceeds $75,000," diversity jurisdiction exists.  Dkt. 1 at 1-2. Courts in this Circuit have continued to recognize that attorneys' fees may be included in the amount in controversy calculation following *Badgerow*.  For example, in *Cox Wootton Lerner, Griffin & Hanson LLP v. Ballyhoo Media Inc.*, the court found that "under *Badgerow*, Cox LLP's application sufficiently alleges diversity jurisdiction" where "the petition states that the ***attorneys' fees and costs*** to be awarded are for a total of $496,583.15, exceeding the $75,000 amount in controversy requirement."  No. 22-CV-00534-CAS, 2022 WL 2132126, at *3 (C.D. Cal. June 13, 2022) (emphasis added).  That court confirmed that including the attorneys' fees in its calculation of the jurisdictional amount does not require it to "look at the underlying substantive dispute," or 'look through' the petition.  *Id.*

The jurisdictional analysis is no different in *Cox* simply because a different party prevailed in the underlying arbitration and the attorneys' fees sought were awarded.  What matters for jurisdictional purposes is not the value of the arbitration award itself, but what the petitioner is seeking from the court—in this case, an award of damages and attorneys' fees.  Federal Courts have repeatedly held that the amount in controversy is the amount sought by a plaintiff.  *Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 664 (9th Cir. 2005) ("The question presented to us thus boils down to whether the $200 million Theis sought to recover by its complaint is the amount in controversy under 28 U.S.C. § 1332(a), or whether the amount in controversy must be measured by the zero dollar arbitration award Theis sought to vacate. We are satisfied that the amount in controversy is the amount Theis sought to recover by its complaint."); *Halliburton Energy Servs., Inc. v. Foord*, No. CV1910481PAMAAX, 2020 WL 2124030, at *3 (C.D. Cal. Jan. 27, 2020)

(finding that the amount sought in the underlying proceeding, and not a $0 arbitration award, "determines the amount in controversy"); *Peraton Gov't Commc'ns, Inc. v. Hawaii Pac. Teleport LP*, No. 21-15395, 2022 WL 3543342, at *1 (9th Cir. Aug. 18, 2022) (reaffirming *Theis* post-*Badgerow*, noting that "[i]n *Theis*, we held that the amount in controversy was 'the amount [Plaintiff] sought to recover by its complaint,' not 'the zero dollar arbitration award [Plaintiff] sought to vacate.' *Id.* at 664. Here, the amount at stake in the underlying litigation is at least approximately $1.5 million, the amount that Peraton sought to confirm in the district court. Thus, the amount in controversy was sufficient to establish diversity jurisdiction."); *Schulcz v. Rocket Mortg., LLC*, No. 1:24-CV-00189-SAB, 2025 WL 926208, at *2 (E.D. Cal. Mar. 27, 2025) ("The amount in controversy is 'simply an estimate of the total amount in dispute,' and may include compensatory damages, punitive damages, and attorneys' fees when authorized by statute."). Thus, in the context of a motion to confirm or vacate an arbitration award pursuant to Sections 9 and 10 of the FAA, the amount in controversy is the amount sought by the petitioner and not the amount of the underlying arbitration award. Creating a new rule that makes the arbitration award the measure of the jurisdictional amount for diversity jurisdiction would require overturning decades of case law and would have the bizarre effect of permitting losing defendants in antitrust arbitrations access to federal courts while foreclosing that same option for losing plaintiffs.

Finally, *Tesla* does not overturn the well-established Ninth Circuit precedent recognizing that statutory or contractually required attorneys' fees are properly included in the amount in controversy for purposes of diversity jurisdiction. *Tesla* involved a petition to confirm an arbitration award of zero dollars where the petitioner did not seek attorneys' fees. As noted above, the relevant inquiry in determining the jurisdictional amount is the amount placed in controversy by the plaintiff or petitioner. In *Tesla*, that amount was zero dollars. Here, by contrast, the Petitioner seeks both damages and attorneys' fees, which together satisfy the amount in controversy requirement.

Valve's critique of the cases cited in the Petition is misguided. *Fritsch v. Swift Transp. Co. of Ariz., LLC* establishes that when attorneys' fees are recoverable by statute, they are properly included in determining the amount in controversy for purposes of diversity jurisdiction. 899 F.3d

785, 793 (9th Cir. 2018). And *McCluskey v. Airbnb, Inc.* confirms that the amount in controversy is the amount sought by the petitioner, not the amount of the arbitration award. No. CV 19-9613 PA (PJWX), 2020 WL 2542616, at *3 (C.D. Cal. Jan 7, 2020). Neither *Fritsch* nor *McCluskey* has been abrogated by *Badgerow* or *Tesla*. In fact, as the court held in *Cox Wootton Lerner, Griffin, & Handson LLP v. Ballyhoo Media Inc.*, including attorneys' fees in the assessment of the amount in controversy is entirely consistent with *Badgerow* and *Tesla*. 2022 WL 2132126, at *3.

In addition, *Costco Wholesale Corp. v. Hoen* supports the proposition that fee shifting is mandatory under 15 U.S.C. § 26, which, under *Fritsch*, means that attorneys' fees are properly included in an assessment of the amount in controversy for diversity jurisdiction cases. 538 F.3d 1128, 1136 (9th Cir. 2008). And *Shannon Assocs. LLC v. MacKay* simply reiterates that, for purposes of diversity jurisdiction, the amount in controversy is the amount at stake—not the arbitration award—regardless of the form that stake takes in a given case. No. C 09-4184 CW, 2009 WL 4756569, at *2 (N.D. Cal. Dec. 8, 2009). These cases are applicable and have not been overruled by *Badgerow* or *Tesla*.

On the other hand, the cases cited by Valve do not address whether attorneys' fees are included for the purposes of the determining the amount in controversy. For example, in *NantKwest, Inc. v. Merck KGaA*, rather than seeking damages and statutorily mandated attorneys' fees, the plaintiff sought only injunctive and declaratory relief. No. 19-CV-1266-L-MSB, 2020 WL 13579225 (S.D. Cal. Feb. 10, 2020). The court dismissed the action, noting that the "collateral effect" following adjudication cannot satisfy the amount in controversy requirement. *Id.* at *2. In *Kamath v. PayPal, Inc.*, the court dismissed the action because the "factual allegations are completely divorced from" the requested $10.5 million damage award sought. No. 23-CV-03636-NC, 2023 WL 9233484, at *2 (N.D. Cal. Nov. 6, 2023), *report and recommendation adopted*, No. 5:23-CV-03636-EJD, 2023 WL 9233496 (N.D. Cal. Dec. 1, 2023). As a result, the court believed the amount sought was not alleged in good faith. Similar reasoning applied in *Poorsina v. Wells Fargo Bank, N.A.*, where the court found that the complaint lacked facts supporting the claimed damages or connecting the harm to the defendant's conduct. No. 21-CV-05098-DMR, 2021 WL 4133866, at *5 (N.D. Cal. Sept. 10, 2021. Notably, none of these cases addressed whether

attorneys' fees made available by statute should be included in calculating the amount in controversy for diversity jurisdiction in petitions to vacate an arbitration award.

### B. Mr. LaPaglia has Sufficiently Alleged the Amount in Controversy Exceeds the Jurisdictional Threshold.

The amount in controversy far exceeds the $75,000 threshold required for diversity jurisdiction. Valve argues, without support, that attorneys' fees of at least $65,199.84 could not be reasonable because it exceeds the total damages sought. Dkt. 11-1 at 15. That, however, is not the test for reasonableness, in antitrust cases or otherwise. "A court generally determines a reasonable fee by calculating the 'lodestar' amount… which is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Nerio Mejia v. O'Malley*, 120 F.4th 1360, 1364 (9th Cir. 2024) (internal citations omitted); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011) (same). This approach reflects the principle that fee awards should compensate for the actual work required to litigate complex antitrust claims, regardless of the monetary value of the damages sought.

This methodology ensures that prevailing plaintiffs in antitrust actions are fully compensated for the time and effort required to prosecute claims that serve significant public interests. The lodestar figure may then be adjusted upward or downward based on various factors, including the complexity of the case, the results obtained, and the public benefit conferred. For example, in *U.S. Airways, Inc. v. Sabre Holdings Corp.*, a jury issued a verdict of $1, trebled to $3, for defendant's antitrust violations. 11 Civ. 2725 (LGS), 2023 WL 3749995 (S.D.N.Y. June 1, 2023). The court then adopted the magistrate's recommendation that the plaintiff's petition for $139,183,723.42 in attorneys' fees be granted, on a preliminary basis, subject to potential downward adjustment following a hearing.[2] Courts do not reduce fee awards solely because they exceed the damages awarded or sought. *See Knutson v. Daily Rev., Inc.*, 479 F. Supp. 1263, 1268 (N.D. Cal. 1979) (noting that a rule that would limit attorneys' fees in antitrust cases to a

---

[2] The case settled before the court ruled on how much, if any, the petitioner's request for $139,183,723.42 should be reduced.

proportion of the damages awarded "may not comport with the legislative purpose underlying Section 4 of the Clayton Act of encouraging the private vindication and enforcement of the antitrust laws" and noting that "[w]here a case involves relatively low monetary damages but nevertheless contains potentially important legal precedent, the percentage approach may offer insufficient incentive for the private bar to prosecute such litigation").

Tying attorneys' fees to the amount of damages sought would undermine the enforcement of antitrust laws by creating a perverse incentive for defendants to prolong litigation and drive up costs. If fee recovery were constrained by the size of the damages claim, well-resourced defendants could exploit this disparity by engaging in scorched-earth tactics, knowing that plaintiffs with limited financial resources would be deterred from pursuing valid claims. This would effectively insulate anticompetitive conduct from accountability, particularly in cases involving injunctive relief or market harms that are difficult to quantify but costly to prove. The lodestar approach prevents this strategic abuse by ensuring that prevailing plaintiffs can recover fees commensurate with the effort necessary to vindicate important statutory rights, regardless of the ultimate damages award.

In this case, Valve has not demonstrated to a legal certainty, as it must to prevail on a motion to dismiss for lack of subject matter jurisdiction, that the amount in controversy is less than the jurisdictional threshold. Put another way, attorneys' fees of at least $65,200 are entirely reasonable and sought in good faith by Mr. LaPaglia. The matter has been pending for over eighteen months, involves complex antitrust issues, and culminated in a two-week long hearing. Dkt. 11-1 at 7. Moreover, Valve cannot credibly argue that such fees are unreasonable. Valve has retained Skadden Arps, one of the most expensive law firms in this country, to represent its interests in this matter. Not only has Valve spared no expense in defending this matter, but its counsel has consistently prolonged the proceedings, including by manufacturing a jurisdictional defect and engaging in unnecessary motion practice before addressing the actual merits of the Petition. Given the scope and duration of the arbitration, as well as the firm Valve has retained and the litigation tactics employed by that firm, it is highly likely that Valve's own legal fees far exceed those incurred by Mr. LaPaglia.

## VI. CONCLUSION

For the foregoing reasons, this Court has supplemental jurisdiction over the FAA § 10 motion to vacate because it has original jurisdiction over the related motion to compel arbitration under FAA § 4. In addition, this Court independently has diversity jurisdiction over the entire Petition because the parties are diverse and the amount in controversy is over $75,000. Accordingly, this Court has subject matter jurisdiction and should deny Valve's Motion.

Dated: July 14, 2025

Respectfully submitted,
Morrow Ni LLP

By: */s/ Xinlin Li Morrow*
Xinlin Li Morrow
*Attorney for Plaintiff*