UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LAPAGLIA, an individual,<br><br>                      Petitioner,<br><br>v.<br><br>VALVE CORPORATION, a corporation,<br><br>                      Respondent. | Case No.:  3:25-cv-00833-RBM-DDL<br><br>**ORDER GRANTING MOTION TO DISMISS THE FIRST AMENDED PETITION TO VACATE ARBITRATION AWARD**<br><br>[Doc. 11] |

      Petitioner John Lapaglia ("Petitioner") filed a Petition to Vacate Arbitration Award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 ("Petition"), seeking to vacate an arbitration award issued in favor of Respondent Valve Corporation ("Respondent"). (Doc. 1.)  On April 29, 2025, Respondent filed a Motion to Dismiss Petition to Vacate Arbitration Award ("Motion to Dismiss"). (Doc. 5).  Petitioner then filed a First Amended Petition to Vacate Arbitration Award and to Reopen Arbitration for a Rehearing ("Amended Petition") (Doc. 7), and Respondent filed a Motion to Dismiss the First Amended Petition (Doc. 11).

      The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons discussed below, the Motion to Dismiss the First Amended Petition (Doc. 11) is **GRANTED**.

## I. BACKGROUND[1]

### A. Factual Background

Respondent, a Washington corporation, is a distributor of personal computer games and the parent company of Steam, a digital gaming platform. (Doc. 1 at 2–3; Doc. 14, Ex. 1 at 3.)[2] Petitioner is a consumer of personal computer games and individual account holder on the Steam platform. (Doc. 1 at 2; Doc. 14, Ex. 1 at 3.) On October 2, 2023, Petitioner filed a demand for arbitration against Respondent with the American Arbitration Association ("AAA"). (Doc. 5-3 at 2–3.) Petitioner alleged that Respondent violated the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2 ("Sherman Act"), Washington's Consumer Protection Act, and California's Unfair Competition Law. (Doc. 5-1 at 6; *see* Doc. 14 at 7, 9.) Petitioner sought an estimated $3,266.72 in actual damages from higher prices he allegedly paid on the Steam platform as a result of Respondent's alleged violations, as well as other relief including attorney's fees, interest, arbitration costs, trebled damages, punitive damages, and injunctive relief. (Doc. 1 at 3; Doc. 5-3, Ex. 1 at 2.)

The arbitration was conducted in accordance with the arbitration agreement contained in Steam's Subscriber Agreement. (Doc. 1-5, Ex. 4 at 2; *see* Doc. 14, Ex. 1 at 29.) Petitioner's claims were consolidated with those of 22 other individuals "who [also] alleged antitrust and state law unfair competition claims against [Respondent]." (Doc. 1 at 3.) On January 7, 2025, Arbitrator Michael Saydah issued a final award in favor of Respondent and denied all of Petitioner's claims ("Arbitration Award"). (Doc. 7 at 3–4; *see* Doc. 14 at 1–30.) In the Arbitration Award, the Arbitrator found there were no antitrust or unfair competition violations and awarded Petitioner no monetary relief. (Doc. 5-1 at 6–7; Doc. 14, Ex. 1 at 30.)

---

[1] The following facts are not disputed unless otherwise noted.

[2] The Court cites the CM/ECF electronic pagination unless otherwise noted.

On February 24, 2025, Respondent filed a petition to confirm the award in the Superior Court of the State of Washington, King County. (Doc. 11-1 at 7.) According to Respondent, the King County Superior Court recently confirmed the Arbitration Award. (Doc. 17 at 3 (citing *Valve Corp. v. LaPaglia*, No. 25-2-06159-1 SEA (Wash. Super. Ct. June 30, 2025)).)[3]

### B. Procedural History

On April 8, 2025, Petitioner filed the Petition alleging the Arbitrator exceed his authority under the Parties' arbitration agreement by: (1) consolidating Petitioner's claims without his consent; (2) refusing to hear evidence pertinent to Petitioner's antitrust claims; and (3) outsourcing his adjudicative role to artificial intelligence. (Doc. 1 at 2.) Respondent filed the first Motion to Dismiss on April 29, 2025. (Doc. 5.)

On May 19, 2025, Petitioner filed the Amended Petition in which he revised his jurisdictional allegations and included a new request for this Court to "direct the AAA to appoint a new arbitrator and administer a rehearing," and "compel the arbitration to be conducted individually." (Doc. 7 at 2.) On May 23, 2025, Respondent filed a Reply in Support of its Motion to Dismiss ("Reply"). (Doc. 8.) In the Reply, Respondent notes that it construed the Amended Petition as an opposition to the Motion to Dismiss because the Amended Petition was procedurally improper. (*Id.* at 5.) "Out of an abundance of caution," Respondent then filed a Motion to Dismiss First Amended Petition on June 2, 2025, which is "substantially identical to and repeats all arguments made in" its first Motion to Dismiss (Doc. 5) and Reply (Doc. 8). (Doc. 11-1 at 5.) On July 14, 2025, Petitioner filed a Response in Opposition to Respondent's Motion to Dismiss First Amended Petition ("Opposition"). (Doc. 16.) On July 21, 2025, Respondent filed a Reply in Support of Motion to Dismiss First Amended Petition ("Reply"). (Doc. 17.)

---

[3] Respondent does not raise any arguments concerning the effect of the Washington Superior Court's order confirming the Arbitration Award on this action.

## II.  LEGAL STANDARD

### A.  Federal Arbitration Act

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") governs the federal courts' review of arbitration decisions.  "[T]he FAA authorizes parties to arbitration agreements to file specified actions in federal court—most prominently, petitions to compel arbitration (under Section 4) and applications to confirm, vacate, or modify arbitral awards (under Sections 9 through 11)." *Badgerow v. Walters*, 596 U.S. 1, 8 (2022).  Judicial review of an arbitration award is "both limited and highly deferential" and it "may be vacated only if it is 'completely irrational' or 'constitutes manifest disregard of the law.'" *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004)).  The "burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.,* 591 F.3d 1167, 1173 (9th Cir. 2010) (citing *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 933 F.2d 1481, 1489 (9th Cir. 1991)).

### B.  Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "'Congress has granted [federal] courts jurisdiction over two main kinds of cases': federal question cases and diversity cases." *Tesla Motors, Inc. v. Balan*, 134 F.4th 558, 560 (9th Cir. 2025) (quoting *Badgerow*, 596 U.S. at 7). "District courts typically have federal question jurisdiction if the suit 'arises under' federal law." *Id*. (quoting *Negrete v. City of Oakland*, 46 F.4th 811, 819 (9th Cir. 2022); and 28 U.S.C. § 1331). "For diversity jurisdiction to attach, the suit must be between citizens of different states, and the 'amount in controversy' must exceed $75,000. *Id*. (quoting 28 U.S.C. § 1332(a)).

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a party may move to dismiss an action for lack of subject matter jurisdiction.  "When subject matter jurisdiction is challenged under [Rule] 12(b)(1), the plaintiff has the burden of proving jurisdiction in

order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

### III.   DISCUSSION

Respondent moves to dismiss this action for lack of subject matter jurisdiction on the grounds that the Amended Petition does not establish either federal question or diversity jurisdiction. (Doc. 11-1 at 9–15.) As a preliminary matter, the Court addresses the procedural issues arising from the Amended Petition and the Parties' various subsequent filings before turning to Respondent's arguments for dismissal.

#### A.   Procedural Issues

Respondent contends the Amended Petition was procedurally improper because the "the Petition is a 'motion' . . . , and the Federal Rules do not provide for amendment of motions as of right." (Doc. 8 at 5; Doc. 11-1 at 5.) Petitioner does not respond substantively to this argument.

Arbitration proceedings under the FAA are governed by the Federal Rules of Civil Procedure "only to the extent that matters of procedure are not provided for" in the FAA. Fed. R. Civ. P. 81(a)(6)(B). An application to vacate an arbitration award filed in district court "shall be made and heard in the manner provided by law for the making and hearing of *motions* . . . ." 9 U.S.C. § 6 (emphasis added). Relatedly, Rule 7(b)(1) requires that a request for a court order be made by motion which must "be in writing . . . state with particularity the grounds for seeking the order; and [ ] state the relief sought." Fed. R. Civ. P. 7(b)(1)(A)–(C). For a "Petition to Vacate" to be construed as a motion, the Ninth Circuit considers whether the petition meets "the other requirements of Fed. R. Civ. P. 7(b)(1)— it state[s] with particularity the grounds for the petition and set forth the relief sought—and that it satisfie[s] the purposes of 9 U.S.C. § 12." *W. Emps. Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 261 (9th Cir. 1992); *see also O.R. Sec., Inc. v. Pro. Plan. Assocs., Inc.*, 857 F.2d 742, 745 (11th Cir. 1988) ("If . . . the application to vacate the award may be brought in the form of a complaint, then the burden of dismissing the complaint would be on the party defending the arbitration award.").

1    Here, the Petition was designated as a "Memorandum of Points and Authorities in
2 Support Thereof" (*see* Doc. 1 at 1) which adheres to this District's Civil Local Rules for
3 motion filing. *See* S.D. Cal. Civ. L.R. 7.1(f)(1). In conformance with Rule 7(b)(1)'s
4 requirements, the Petition sets forth Petitioner's arguments for vacatur, supported by legal
5 authority and accompanying exhibits, and clearly specifies the factual bases upon which
6 relief under FAA § 10 is sought. (*See* Doc. 1 at 2–11). It also placed Respondent on timely
7 notice of Petitioner's intent. *See* 9 U.S.C. § 12 ("Notice of a motion to vacate . . . an award
8 must be served upon the adverse party . . . within three months after the award is filed or
9 delivered."). Accordingly, the Court construes the Petition as a motion. *See W. Emps. Ins.*
10 *Co.*, 958 F.2d at 261 (construing an initial petition as a "notice of a motion to vacate").

11    Because the Petition is not a "pleading" within the meaning of Rule 7(a), Petitioner
12 did not have a right to amend the Petition as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)
13 (allowing a party to "amend its *pleading*.") (emphasis added). In its discretion, the Court
14 nonetheless considers the Amended Petition to resolve the Parties' dispute. *See W. Emps.*
15 *Ins. Co.*, 958 F.2d at 261 (finding the initial petition to vacate, together with the petitioner's
16 later-filed motion for summary judgment, "met the requirements of 9 U.S.C. § 12.").

17    Despite the assortment of briefs currently before the Court, the Parties do not dispute
18 the material facts underlying their dispute. Respondent does not seek dismissal, or any
19 other form of relief, based on Petitioner's procedurally improper filing. Instead,
20 Respondent filed the Motion to Dismiss the Amended Petition which "is substantially
21 identical to and repeats all arguments made in" its first Motion to Dismiss. (Doc. 11-1 at
22 5.) By filing the Amended Petition (Doc. 7) and the Opposition (Doc. 16), Petitioner was
23 also afforded multiple opportunities to defend against Respondent's arguments for
24 dismissal. Accordingly, the Petition (Doc. 1) and Respondent's first Motion to Dismiss
25 (Doc. 5) are **DENIED AS MOOT**.[4]

---

[4] The Court will consider the Petition's accompanying exhibits in its analysis.

### B. Subject Matter Jurisdiction

Respondent argues that this Court lacks subject matter jurisdiction because: (1) the Amended Petition does not arise under federal law to invoke this Court's federal question jurisdiction; and (2) the amount in controversy does not exceed $75,000 as required to establish diversity jurisdiction. (Doc. 11-1 at 9–15.)

Although the FAA creates substantive law governing arbitration agreements, it "does not itself confer jurisdiction on federal district courts over actions to compel arbitration or to confirm or vacate arbitration awards, nor does it create a federal cause of action giving rise to federal question jurisdiction under 28 U.S.C. § 1331." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 918 (9th Cir. 2009) (citations omitted). Instead, "parties seeking relief under the FAA [must] establish 'an independent jurisdictional basis' for a federal court's jurisdiction." *Tesla*, 134 F.4th at 560 (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). To determine whether a basis for federal jurisdiction exists in petitions to confirm or vacate an arbitral award, under Sections 9 and 10 of the FAA respectively, federal courts must review "the face of the application itself." *Badgerow*, 596 U.S. at 9.

The Court addresses each basis for federal jurisdiction in turn.

#### 1. Federal Question Jurisdiction

Respondent argues that federal question jurisdiction does not exist because "federal law does not create the cause of action asserted" (Doc. 11-1 at 9) and "the Amended Petition does not raise any issue of federal law" (*id*. at 10). In his Opposition, Petitioner contends for the first time that this Court has federal question jurisdiction over his "related motion to compel arbitration under FAA § 4" (Doc. 16 at 14) because the arbitration involved federal claims under the Sherman Act (*id*. at 6). Petitioner also contends the Amended Petition "though brought under FAA § 10, falls within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a)." (*Id*. at 6.)

Federal question jurisdiction exists over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case 'arises under' federal

law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088 (9th Cir. 2002) (cleaned up) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 8–9 (1983)).  In a petition to compel arbitration, FAA § 4 directs federal courts to "'look through' the petition to the 'underlying substantive controversy' between the parties" to determine whether federal jurisdiction exists.  *Badgerow*, 596 U.S. at 4–5 (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009)).  In contrast, petitions to confirm or vacate an arbitral award under FAA §§ 9 and 10 do not "arise under" federal law merely because "the underlying arbitration involves a federal question."  *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 (9th Cir. 2004).

In this case, the Amended Petition does not establish federal question jurisdiction. Although Petitioner attempts to characterize his request to reopen arbitration as a "motion to compel arbitration" (*see* Doc. 16 at 6), Petitioner did not file such a motion or seek relief under FAA § 4.  In the Amended Petition, Petitioner seeks to vacate the Arbitration Award, direct the AAA to "administer a rehearing in the underlying arbitration" and "compel the arbitration to be conducted individually and not in a consolidated fashion."  (Doc. 7 at 2, 12.)  FAA § 10 provides for such relief.  *See* 9 U.S.C. § 10 ("If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.").  The Amended Petition notably does not reference FAA § 4 or otherwise explain how its requirements are met. Petitioner's request for rehearing therefore does not constitute a motion to compel under FAA § 4.  Indeed, as Respondent notes (*see* Doc. 17 at 5), Petitioner cannot successfully move to compel arbitration because the Parties have already completed arbitration.  *See Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1181 (9th Cir. 2025) ("By its plain terms," FAA § 4 "conditions a district court's authority to compel arbitration upon a showing that a party has failed, neglected, or refused to arbitrate.").  Accordingly, the federal claims in the underlying arbitration do not provide a basis for this Court's federal question jurisdiction.

Additionally, the Amended Petition does not raise any claims or issues of federal law. Because Petitioner's sole claim is for relief under FAA § 10, the Court may "look only to the application actually submitted to it in assessing its jurisdiction." *Badgerow*, 596 U.S. at 5. In the Amended Petition, Petitioner raises arguments for vacatur concerning the scope of the Parties' arbitration agreement and evidentiary issues (*see* Doc. 7 at 5) which do not implicate federal law. *See Badgerow*, 596 U.S. at 12 ("Congress has not authorized a federal court to adjudicate a Section 9 or 10 application just because the contractual dispute it presents grew out of arbitrating different claims"). Accordingly, the Court lacks federal question jurisdiction and supplemental jurisdiction over this action.

### 2.  Diversity Jurisdiction

Petitioner asserts the amount in controversy requirement is met because the attorney's fees he "would be awarded if [he] prevails in an arbitral re-hearing" would "easily exceed[ ] $75,000." (Doc. 7 at 3.) Respondent argues that Petitioner cannot establish the jurisdictional threshold is satisfied because: (1) the Amended Petition, on its face, does not demonstrate more than $75,000 in controversy; and (2) under Supreme Court and Ninth Circuit precedent, the Court cannot consider the amount Petitioner claimed in the underlying arbitration to assess the amount in controversy. (Doc. 11-1 at 6, 11–14 (citing *Badgerow*, 596 U.S. at 12; and *Tesla*, 134 F.4th at 561).)[5]

Federal courts considering petitions to vacate under FAA § 10 should apply "the ordinary rules" of federal jurisdiction, including those concerning diversity jurisdiction. *Badgerow*, 596 U.S. at 17–18. Where the plaintiff originally files in federal court, "the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). "[F]acts establishing that the amount in controversy exceeds $75,000 must be present on the face of a Section 9 petition to confirm an arbitration award before a district court can assert diversity jurisdiction over the

---

[5] The diversity of citizenship requirement is undisputed. (*See* Doc. 11-1 at 6.)

action." *Tesla*, 134 F.4th at 561 (noting the same reasoning applies to petitions under Section 10 of the FAA). "[G]ood faith allegations in [a] petition as to the amount in controversy suffice to establish the jurisdictional amount unless it appears legally certain that the amount in dispute is $75,000 or less." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010).

Here, the face of the Amended Petition reflects a zero-dollar arbitration award which is less than the amount in controversy requirement. *See Tesla*, 134 F.4th at 561 ("On its face, a petition to confirm a zero-dollar award cannot support the amount in controversy requirement."). Petitioner claims the attorney's fees he "would have been entitled to" exceeds $75,000 because the arbitration "was heavily litigated for a year and half before reaching a merits hearing, which lasted two weeks." (Doc. 7 at 1; *see* Doc. 16 at 13.) However, the Amended Petition does not estimate how much the potential fee award placed in controversy or otherwise indicate the amount of attorney's fees that Petitioner incurred.[6] Nor does it provide facts supporting an attorney's fee award exceeding $75,000 is recoverable when Petitioner sought a maximum of $9,800.16 in damages in the arbitration. (*See* Doc. 11-1 at 15.) The Amended Petition also does not state the amounts of damages or other forms of relief that Petitioner sought to recover in the underlying arbitration, estimated or otherwise. Thus, Petitioner fails to establish the amount in controversy is met for purposes of diversity jurisdiction. *See Tosco Corp.*, 236 F.3d at 499 ("When subject matter jurisdiction is challenged under [Rule] 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.").

While this pleading deficiency is not fatal, even if Petitioner "simply . . . copied [his] requests for relief [that were rejected in arbitration] into his petition to vacate the arbitration

---

[6] Petitioner does not provide any estimate of or basis for a potential amount of attorney's fees in the arbitration. Although Petitioner claims "attorneys' fees of at least $65,200 are entirely reasonable and sought in good faith" (Doc. 16 at 13), Respondent provided this estimate in its Motion to Dismiss the Amended Petition. (*See* Doc. 11-1 at 15.)

1 award," it appears legally certain that the amount in controversy is less than $75,000
2 because the Court may not "look through" to the underlying substantive dispute to assess
3 jurisdiction. *Floyd v. ELCO Admin. Servs. Co.*, Case No. 24-cv-09420-SVK, 2025 WL
4 1507095, at *4 (N.D. Cal. May 27, 2025). Petitioner argues that, under Ninth Circuit
5 precedent, the amount in controversy includes the attorney's fees award he stands to gain
6 if he wins in arbitration because he seeks to reopen arbitration. (Doc. 7 at 3 (citing *Theis*
7 *Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 664 (9th Cir. 2005)).) In *Theis*, the Ninth
8 Circuit held that the jurisdictional amount should be assessed under a "mixed approach"
9 which turned on "whether the party seeking to vacate an arbitration award also sought to
10 reopen the arbitration." 400 F.3d at 664–665. If the petitioning party sought to reopen the
11 arbitration, courts were to consider "[t]he amount at stake in the underlying litigation, not
12 the amount of the arbitration award," as the amount in controversy. *Id*. at 662, 665.

13 However, the Supreme Court rejected this "look through" approach in 2022 and held
14 that federal courts may "look only to the application actually submitted to it in assessing
15 its jurisdiction" over "requests to confirm or vacate arbitral awards under the FAA's
16 Sections 9 and 10." *Badgerow*, 596 U.S. at 5. Sections 9 and 10 of the FAA notably lack
17 the statutory language in Section 4 which instructs federal courts to "assume the absence
18 of the arbitration agreement" and look through "to the 'underlying substantive
19 controversy.'" *Id*. at 10–11 (quoting *Vaden*, 556 U.S. at 62). While the issue in *Badgerow*
20 concerned federal question jurisdiction, the Supreme Court nonetheless reasoned that "the
21 underlying dispute is not [ ] at issue" post-award because "the application concerns the
22 contractual rights provided in the arbitration agreement, generally governed by state law."
23 *Id*. at 18. As other district courts have found, "the Supreme Court's rejection of a 'look
24 through' approach to jurisdiction in *Badgerow* would appear to impact, if not preclude, the
25 Ninth Circuit's 'mixed approach' of looking at the amount claimed in the arbitration to
26 determine jurisdiction in a case seeking to reopen the arbitration, as enunciated in *Theis*
27 *Research*." *New Frontier Inv. AG v. BitCenter, Inc.*, 715 F. Supp. 3d 1245, 1254 (N.D.
28 Cal. 2024); *see Craig Hosp. v. United Healthcare Servs., Inc.*, Civil Action No. 24-cv-

03050-PAB-STV, 2025 WL 2602399, at *6–7 (D. Colo. Sept. 9, 2025) (rejecting "argument that the value of the matter in controversy . . . is the value of [the petitioner's] claims in the arbitration proceedings.") (collecting cases); *Dixon v. PayPal Inc.*, 22-CV-5710 (RPK) (LB), 2023 WL 6283286, at *1 (E.D.N.Y. Sept. 26, 2023) ("[O]nly the award approach is viable after . . . *Badgerow*.").

The Court agrees with these courts' reasoning and finds that Petitioner has not sufficiently pled that the amount of potential attorneys' fees exceeds $75,000 and, even if he had, the Court cannot "look-through" the Amended Petition to consider such an amount. *See Craig Hosp.*, 2025 WL 2602399, at *6–7 ("[T]he 'matter in controversy' in petitions to vacate an arbitration award under § 10 of the FAA is the enforceability of the award itself, which is a matter unrelated to the parties' underlying claims.") (citing *Badgerow*, 596 U.S. at 9, 12); *see also Quinault Tribe of Indians v. Gallagher*, 368 F.2d 648 (9th Cir. 1966) ("[J]urisdiction depends upon the matter directly in dispute in the particular cause, and the court is not permitted, for the purpose of determining its sum or value, to estimate its collateral effect."). Because it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount," the Court lacks subject matter jurisdiction over this action. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 288–89.

## IV. CONCLUSION

Based on the foregoing reasons, the Motion to Dismiss the Amended Petition (Doc. 11) is **GRANTED** and the Amended Petition (Doc. 7) is **DISMISSED** for lack of subject matter jurisdiction. The Petition (Doc. 1) and the Motion to Dismiss (Doc. 5) are therefore **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE: December 9, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE